549 F.2d 1330
 14 Fair Empl.Prac.Cas. 995, 14 Empl. Prac.
Dec. P 7541
James GAY, Leonard Whitman, Douglas Lee and Frederick
McDowell, on behalf of themselves and all persons
similarly situated, Plaintiffs-Appellants,
v.
WAITERS' AND DAIRY LUNCHMEN'S UNION, Local No. 30, the St.
Francis Hotel Corporation, and Alioto's No. 8
Restaurant, Defendants-Appellees.
 No. 75-2197.
 United States Court of Appeals,
Ninth Circuit.
 March 11, 1977.
 
 1
 Marjorie Gelb, Kenneth Hecht, Employment Law Center, (argued), and Stephanie Wildman, San Francisco, Cal., for plaintiffs-appellants.
 
 
 2
 Alan C. Davis (argued), Davis, Cowell & Bowe, Donald D. Connors, Jr. (argued), Brobeck, Phleger & Harrison, Michael Rubenstein, Richard Saveri (argued), Saveri & Saveri, San Francisco, Cal., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 Before HUFSTEDLER and GOODWIN, Circuit Judges, and FITZGERALD,* District Judge.
 
 OPINION
 FITZGERALD, District Judge:
 
 5
 In March of 1973 four black waiters commenced this suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., and the Civil Rights Act of 1866, 42 U.S.C. 1981, against Waiters' and Dairy Lunchmen's Union, Local 30, the St. Francis Hotel Corporation, and Alioto's No. 8 Restaurant seeking relief from the defendants' alleged racially discriminatory employment practices in the San Francisco restaurant trade.
 
 
 6
 Plaintiffs alleged that the defendants' employment policies and practices resulted in long-standing, systemic discrimination affecting all blacks who sought or had gained membership in Local 30 or who sought or gained employment as waiters with the employer-defendants. The suit was brought as a Rule 23(b) (2) class action on behalf of all past, present, and future black waiters and sought back pay and broad injunctive relief to redress the discriminatory practices suffered by the class.
 
 
 7
 The trial court denied plaintiffs' motion for class certification in an opinion and order dated March 19, 1975. This appeal is taken from that order.
 
 
 8
 The threshold issue is whether this court has jurisdiction to review the district court's order denying class certification. We conclude that denial of class certification forecloses the broad injunctive relief sought on behalf of the class,[1] thus conferring jurisdiction in this court pursuant to 28 U.S.C. 1292(a)(1).[2] Price v. Lucky Stores, Inc., 501 F.2d 1177 (9th Cir. 1974); Spangler v. United States, 415 F.2d 1242 (9th Cir. 1969); Inmates of San Diego Jail v. Duffy, 528 F.2d 954 (9th Cir. 1975).
 
 
 9
 We pass, therefore, to the central issue, the denial of class certification. The district court rejected class certification because plaintiffs failed to prove that potential class members were so numerous that joinder would be impractical as required by F.R.C.P. 23(a)(1).[3] Although plaintiffs identified 184 potential plaintiffs,[4] the district court concluded that in light of the liberal pleading and joinder rules of federal courts it was not impractical to proceed by joining individual plaintiffs. The court reasoned that the number of potential class members listed by the plaintiffs would be reduced in part since any claims prior to March 28, 1973, would be time-barred. The court recognized that there might be more members in the classes for which certification was requested but refused to assume the existence of other potential plaintiffs without proof.[5] The court then suggested as an alternative to class certification, that all purported eligible class members be given notice of the action and an opportunity to intervene.[6]
 
 
 10
 The decision to grant or deny class action certification under Rule 23 is within the trial court's discretion and will be reversed on appeal only if an abuse of discretion is shown, Price v. Lucky Stores, Inc., supra, at 1179; or if the trial court has applied impermissible legal criteria or standards, Carey v. Greyhound Bus Co., 500 F.2d 1372 (5th Cir. 1974).
 
 
 11
 The trial court's opinion recognized that the number of potential members in a purported class should not alone determine whether the class should be certified.[7] We believe, however, that this factor was unduly emphasized in denying class certification in this case. More importantly, the district court erred in failing to consider the broad remedial purpose of Title VII.
 
 
 12
 The Supreme Court recently held that a trial court's discretion to refuse to award back pay to successful plaintiff class members in a Title VII case is circumscribed by the broad remedial purpose of Title VII, "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). Similarly, we believe that a trial court's discretion to determine whether a Title VII action shall proceed as a class action is limited by the Congressional purpose expressed in the Act.
 
 
 13
 Employment discrimination based on race, sex, or national origin is by definition class discrimination. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). Since the purpose of Title VII is to eliminate such class based discrimination, class actions are favored in Title VII actions for salutary policy reasons.
 
 
 14
 Other circuits have considered the issue of class litigation of Title VII claims[8] and have reached the conclusions that class actions are consistent with the broad remedial purpose of Title VII.
 
 
 15
 For example, in Romasanta v. United Airlines, Inc., 537 F.2d 915, 918 (7th Cir. 1976), the Seventh Circuit reversed the trial court's denial of class certification in a Title VII case, concluding that:
 
 
 16
 Because the Civil Rights Act of 1964 attacks class-based discrimination, it is particularly appropriate that suits to remedy violations of the Act be brought as class actions.
 
 
 17
 As a further example, in Rodriquez v. East Texas Motor Freight, 505 F.2d 40, 50 (5th Cir. 1974), the Fifth Circuit said:
 
 
 18
 The plaintiff class representatives, of course, must establish that the action meets the requirements of Rule 23(a) . . . But the requirements of Rule 23(a) must be read liberally in the context of suits brought under Title VII and Section 1981 . . . Suits brought under these provisions are inherently class suits. By definition, discrimination on the basis of race or national origin is a class wrong . . . And a suit charging employment discrimination is naturally "a sort of class action for fellow employees similarly situated" . . . (citations omitted)
 
 
 19
 In Rich v. Martin Marietta Corp., 522 F.2d 333, 340 (10th Cir. 1975), the Tenth Circuit reached a similar conclusion in holding that the scope of the plaintiff class had been unduly limited:
 
 
 20
 Class actions are generally appropriate in Title VII employment discrimination cases. The reason for this is that although these suits are self-help, so to speak, actions, they also have a broad public interest in that they seek to enforce fundamental constitutional principles as well as to advance the rights of the individual plaintiffs who bring the action.
 
 
 21
 Moreover, the legislative history of Title VII shows that Congress itself recognized the importance of class actions by private litigants in accomplishing the statutory purpose of eliminating discrimination in employment. In the course of enacting the Equal Employment Opportunity Act of 1972, Pub.L. 92-261, 86 Stat. 103, the House of Representatives passed a bill which prohibited class action lawsuits for back pay. The Senate Committee recommended against such a limitation on class actions stating:
 
 
 22
 The (Senate) Committee agrees with the courts that Title VII actions are by their nature class complaints and that any restrictions on such actions would greatly undermine the effectiveness of Title VII.
 
 
 23
 Senate Report 92-415, 92d Congress, p. 27. See also 118 Cong.Rec. 4942 (1972).
 
 
 24
 The Senate passed the bill without limitation on class actions and the Senate's position was adopted by the Conference Committee. 118 Cong.Rec. 7168, 7565. The bill was enacted by Congress as reported by the Conference Committee. Id., at 7170, 7573.[9]
 
 
 25
 Based on the foregoing, we conclude that in determining whether an action alleging discriminatory employment practices shall be allowed to proceed as a class action, a trial court must consider the broad remedial purposes of Title VII and must liberally interpret and apply Rule 23 so as not to undermine the purpose and effectiveness of Title VII in eradicating class-based discrimination.
 
 
 26
 Since, in the instant case, the district court failed to consider the broad remedial purposes of Title VII and applied Rule 23(a)(1) in an unduly restrictive manner, the denial of class certification is reversed and the case is remanded for re-determination of class certification consistent with this opinion.
 
 
 
 *
 Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 We do not decide here whether an individual in a Title VII action might obtain relief which benefits non-parties and is broader than that necessary to protect his own individual interests. Cf. Gregory v. Litton Systems, Inc., 472 F.2d 631 (9th Cir. 1972)
 
 
 [2]
 28 U.S.C. 1292(a)(1) provides: "(a) The court of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . ."
 
 
 [3]
 Each of the requirements of Rule 23(a) must be met before a class action can be maintained. The first prerequisite is that the class be "so numerous that joinder of all members is impracticable."
 
 
 [4]
 Black men who were members of the union at any time between January 1, 1966 and July 3, 1974
 
 
 [5]
 But see Senter v. General Motors, 532 F.2d 511, 523 (6th Cir. 1976). In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings and an appellate court will generally defer to the district court's determination that the class is sufficiently numerous as to make joinder impractical
 
 
 [6]
 The efficacy of this alternative may be doubtful in light of Pan Am. World Airways, Inc. v. U. S. Dist. Ct., C.D.Calif., 523 F.2d 1073 (9th Cir. 1975)
 
 
 [7]
 Certification of a class under Rule 23 has been granted many times on lesser numbers than in the present case. Typical is Sagers v. Yellow Freight System, Inc., 529 F.2d 721 (5th Cir. 1976): "First, the union alleges that the numerosity requirement of Rule 23(a)(1) has not been met. This argument is frivolous. The affidavits and answers to plaintiffs' interrogatories submitted by Yellow Freight established that as of May 12, 1972, Yellow Freight employed approximately 130 blacks (excluding road drivers) at Southern Conference terminals. Since approximately 20 were hired after July 1, 1971, there appear to be approximately 110 members of the class, clearly a sufficient number to meet the numerosity requirements of Rule 23(a)(1)."
 
 
 [8]
 Cases considering the issue include: Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Bing v. Roadway Express, Inc., 485 F.2d 441 (5th Cir. 1973); Carey v. Greyhound Bus Co., 500 F.2d 1372 (5th Cir. 1974); Bowe v. Colgate Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970); Barnett v. W. T. Grant Co., 518 F.2d 543 (4th Cir. 1975); Senter v. General Motors, 532 F.2d 511 (6th Cir. 1976)
 
 
 [9]
 The Supreme Court relied on this excerpt of the legislative history of Title VII in Albemarle Paper Co. v. Moody, supra, 422 U.S. 414 n. 8, 95 S.Ct. 2362