Betty J. KARAN and Marjorie A. Mitchell, on behalf of themselves and on behalf of all other persons similarly situated, Plaintiffs,

v.

NABISCO, INC., a corporation, Defendant.

Civ. A. No. 75–1356.

United States District Court, W. D. Pennsylvania.

March 23, 1978.

Roslyn Litman and John E. Grasberger, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiffs.

Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

James S. Bukes, EEOC District Office, Pittsburgh, Pa., for intervenor.

## OPINION

SNYDER, District Judge.

### I. INTRODUCTION

Betty J. Karan and Marjorie A. Mitchell, employees of Nabisco, Inc. at its Pittsburgh Bakery, have brought suit against Nabisco alleging sex discrimination in employment in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* and the Pennsylvania Human Relations Act, 43 P.S. §§ 951–63. They have moved the Court, in accordance with Federal Rule of Civil Procedure 23(c)(1), to determine that they may maintain the suit as a Rule 23(b)(2) class action, representing all female employees and job applicants at all of Nabisco's over 300 facilities.[1] Plaintiffs conducted discovery on the class question, and on June 12, 1977, this Court set a briefing schedule and directed Plaintiffs to file a statement with appropriate affidavits defining the class they seek to represent. During the briefing period, the Equal Employment Opportunity Commission (EEOC) was granted leave to intervene.[2] The case

1. They have since reduced the class they purport to represent. See *infra* at 395 and note 3.

2. The EEOC filed an Intervenor's Complaint seeking to represent the same class as asserted by Karan and Mitchell in their Class Certification Statement, alleging that Nabisco has engaged in unlawful policies and practices which discriminate against females, including discrimination in seniority; layoff and recall; hiring and assignment; job classification; promotion; wages; and general terms and conditions of employment.

Because of our decision as to the named Plaintiffs' ability to represent the asserted class, the Court need not address the question of whether the EEOC could represent the class if the named individuals could not, and if so, if the EEOC would have to meet the Rule 23 requirements for class actions. *See generally, The Applicability of Rule 23 to EEOC Suits: An*

is now in a proper posture for class determination.

Betty Karan is a non-supervisory employee at Nabisco's Pittsburgh Bakery and a member of the local bargaining unit, the American Bakery and Confectionary Workers, Local 12–A. On November 17, 1973, she filed charges with the EEOC, complaining that Nabisco discriminated against females in layoffs, seniority, wages, job classifications, promotion, job transfer, overtime opportunity, shift selection, job bidding, grooming policies, maternity leave and benefits, and that women who were placed in male jobs were harassed.

Marjorie Mitchell was a non-union supervisory employee at the Pittsburgh Bakery. She filed charges against Nabisco with the EEOC on February 11, 1974, alleging Nabisco discriminated against female supervisors in hiring practices, advancement to foreman positions, management training, wages and benefits.

Both women received right to sue notices from the EEOC and timely filed suit in this Court. In their Amended Complaint they allege that "[s]ince July 2, 1965, and for years prior thereto, Nabisco has enacted and effected employment policies and procedures of discrimination against females." (Amended Complaint ¶ 8). They sought to maintain the action individually and on behalf of "all present and future female employees and job applicants of Nabisco and all females who were employed by, or who applied for employment with, [Nabisco] at any time on or after July 2, 1965" (Amended Complaint ¶ 9), with whom they raise common questions of law and fact concerning sex discrimination in hiring and job placement, job classification, employee recruitment, promotion, compensation, benefits, seniority, layoff and recall, and terms and conditions of employment. (Amended Complaint ¶ 12). They allege that Nabisco

acted or refused to act on grounds generally applicable to the class, thus making the action appropriate under Rule 23(b)(2), and they ask the Court to require Nabisco to effect non-discriminatory policies, to enjoin future illegal acts and the entering into any discriminatory collective bargaining agreements, to require Nabisco to pay back pay, reasonable attorney's fees and costs of suit. (Amended Complaint ¶ 14).

In their class certification statement, Plaintiffs narrowed the class they seek to represent to

all present and future female employees and job applicants *at [Nabisco's] bakeries* and all females who applied for employment *at [Nabisco's] bakeries* at any time on or after *January 21, 1973.* (parts in emphasis indicate limitations on the previously asserted class) [3]

Nabisco strongly urges that even this narrowed class is grossly overbroad and unmanageable. It contends that if any class is appropriate at all, jurisdictional and Rule 23 considerations limit the class to the Pittsburgh Bakery employees.

## II. CLASS DETERMINATION PROCEDURE

Class action determination must be approached very carefully for, although it is neither dependent on nor determinative of the merits of the named plaintiffs' claim, such a determination is extremely important. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 37 (N.D.Cal.1977). Rule 23 was designed to provide flexibility for early and effective management (*Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 184, 94 S.Ct. at 2155) and provides "[a]s soon as practicable after commencement of an action", the Court must determine

---

*Examination of EEOC v. D. H. Holmes Co.,* 28 Syr.L.Rev. 741 (1977).

**3.** By limiting the class to employees and applicants at the bakeries only, the number of separate facilities involved is reduced to 11. By limiting the class further to only those who worked or applied after January 21, 1973 (300 days before Karan filed her EEOC charge), Plaintiffs attempted to include only those who could have filed timely EEOC charges themselves at the time Karan's were filed, or thereafter. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3d Cir. 1975).

whether the action may be maintained on behalf of a class, and the scope of that class.[4] Fed.R.Civ.P. 23(c)(1) & (3).

■ Certainly, class determination is preferable before substantial discovery on the merits has been conducted.[5] Where the plaintiffs seek to represent a large national class on a broad spectrum of employment conditions, discovery can require immense commitments of time, money and resources and involve innumerable documents and records. Neither party would benefit from such extensive expenditures when it could have been determined in the early stages that a class action was not appropriate or that the class must be more limited in scope than originally alleged by the plaintiffs.

■ In making the class determination, however, the Court must bear in mind that even though some discovery may have been permitted on the question of class representation, and the burden rests with the plaintiffs to establish that the Rule 23 prerequisites are satisfied, *Senter v. General Motors Corp.*, 532 F.2d 511, 520 (6th Cir. 1976), *cert. den.*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150; *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir. 1975); *Redhouse v. Quality Ford Sales, Inc.,* 511 F.2d 230, 235 (10th Cir. 1975); *Davis v. Romney,* 490 F.2d 1361 (3rd Cir. 1974), the record in the early stages is incomplete, and the Court may be limited to some extent by principles of due process in redefining the class in later stages.[6] *Harriss v. Pan American World Airways, Inc., supra,* 74 F.R.D. at 36 & 37, and cases cited therein. Furthermore, courts have generally recognized that the inherently class-based and equitable nature of Title VII discrimination claims makes them particularly suitable to Rule 23(b)(2) class actions. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453, 52 L.Ed.2d 453, 463 (1977); *Gay v. Waiters' and Dairy Lunchmen's Union,* 549 F.2d 1330, 1334 (9th Cir. 1977); *Crockett v. Green,* 534 F.2d 715, 718 (7th Cir. 1976); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 250 (3rd Cir.), *cert. den.,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). When an individual seeks relief for himself, he necessarily raises questions of consequence to employees similarly situated, *Gay v. Waiters' and Dairy Lunchmen's Union, supra,* 549 F.2d at 1333; *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 250, and he assumes the role of vindicator of the public interest. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1205, 92 S.Ct. 536, 30 L.Ed.2d 543 (7th Cir. 1971), *cert. den.,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719–20 (7th Cir. 1969); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968). The Court, in

---

4. These requirements reflect a Congressional recognition that if potentially complex class actions are to proceed fairly and manageably, the court must determine who will be represented in the suit as early as possible. An early class determination need not be a final one conclusively defining those to be bound by the judgment. To the contrary, Rule 23 provides a continuing mandate, and the Court has the power and the duty to redefine or exclude a class, create subclasses, or limit the class-wide issues as the record becomes more complete in subsequent stages of the litigation. Fed.R. Civ.P. 23(c)(1) and (4); *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 185, 94 S.Ct. 2140; *Harriss v. Pan American World Airways, Inc., supra,* 74 F.R.D. at 36. At all times throughout the process, the Court must assure that the class action device is properly being used in the interests of judicial economy, convenience to the parties, and fairness to all concerned.

5. Whether this procedure is "practicable" will depend on the particular circumstances of each case. "Practicality . . . must be judged on the basis of factors such as the detail in the pleadings, the amount of discovery pending and completed, the nature of the suit, fairness to the parties, and judicial efficiency." *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975). To make early class determination practicable in many cases and best serve the ends of fairness and efficiency, the Court may, as here, direct the parties to focus their initial discovery on matters pertaining to the class question.

6. Due process would impose more limitations on expansion of the class, especially after trial on the merits, than on reduction of the class for failure of the representatives to meet Rule 23 requirements.

addition to affording private relief, likewise has a "special responsibility in the public interest to devise remedies which effect the policies of [Title VII]." *Sprogis v. United Air Lines, supra,* 444 F.2d at 1201. The class action provides an expeditious vehicle to accomplish these ends.

■■■ To say that the class action is an appropriate procedure in Title VII cases, however, does not mean that courts can ignore the requirements of Rule 23(a). *East Texas Motor Freight System, Inc. v. Rodriguez, supra,* 431 U.S. 405, 97 S.Ct. at 1898, 52 L.Ed.2d at 463. Only if the civil rights of all class members are aggressively protected does the Title VII class action serve the public interest. *See East Texas Motor Freight System, supra,* 431 U.S. at 405, 97 S.Ct. at 1898, 52 L.Ed.2d at 463. Overbroad or ill-defined classes could operate to preempt legitimate, but inadequately represented, claims of absent class members.[7] Furthermore, in Rule 23(b)(2) actions, it is the homogeneity of the class which makes strict notice and opt-out provisions unnecessary.[8] *Wetzel v. Liberty Mutual Insurance, supra,* 508 F.2d at 256–57.

Due process to the absent members therefore requires that the class in fact be homogeneous and the representation be adequate.

■■■ In Title VII cases, then, the courts must be receptive to use of the class action vehicle to provide a means for broad class-based relief, while at the same time assuring that the class representatives are proper ones and the interests of all absent members are vigorously protected.

### III. STANDING OF REPRESENTATIVE PLAINTIFFS

■■■ Defendant has raised certain preliminary objections to the national class asserted by Plaintiffs which must be considered before addressing the specific requirements of Rule 23. The first of these objections is Plaintiffs' standing to represent the class. If at the time the action was filed the representative plaintiffs clearly had no claim cognizable under Title VII, and thus failed to present a justiciable controversy, they cannot represent a class that may have such a controversy.[9] *Sosna v.*

---

**7.** If the class representation is inadequate, the individual class members will not be bound by *res judicata. Hansberry v. Lee,* 311 U.S. 32, 44–46, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 256. Thus, if after trial purportedly on behalf of a class the court determines that the representation was inadequate, the court should exclude the class from the judgment. Nevertheless, individual class members could be prejudiced by a court's failure to properly define the class and assure adequate representation as early as possible. During the penaency of the class suit, many individuals will be dissuaded from filing their own actions. Even efficient processing of a large class suit may require several years before completion of the trial, and overbroad classes may cause inordinate delays. If overbroad and ill-defined classes are permitted to be represented at trial, then, individuals could be frustrated from relief for several years only to find their representation inadequate. Although the limitations period would have been tolled during the class suit, and they could file their own actions, they would have lost the benefits of injunctive relief during the interim and the long delays could have jeopardized their ability to prove their claims. The objectives of Title VII and the class action device would certainly be dis-

served, then, by proceeding to trial on a class incapable of vigorous and adequate representation on all issues.

**8.** In *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 176, 94 S.Ct. 2140, the Supreme Court rejected the contention that in a Rule 23(b)(3) class suit adequate representation alone was the "touchstone of due process", pointing to the fact that Rule 23 required both adequate representation and notice in (b)(3) suits. In *Wetzel v. Liberty Mutual Insurance Co., supra,* the Third Circuit concluded that in Rule 23(b)(2) class actions in which notice is not mandated by the Rule, the contention of adequate representation and the homogeneity of the class inherent in (b)(2) suits satisfied due process without notice. Thus, the homogeneity of the class minimized the need for notice. Nevertheless, the exercise of sound discretion may require the court to order some form of notice in certain (b)(2) actions to accomplish the ends of justice. Rule 23(d)(2); 508 F.2d at 256. The more closely aligned the interests of the class are, the less will be the need for notice to the class members.

**9.** The question here is not whether the named Plaintiffs have stated a cause of action as to themselves, *Eisen v. Carlisle & Jacquelin, su-*

*Iowa,* 419 U.S. 393, 402–03, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Also, if at the time of class determination the named plaintiffs obviously have not suffered the *same* cognizable injury as the rest of the class, they are not members of the class of persons they seek to represent and lack standing to represent them.[10] *East Texas Motor Freight v. Rodriguez, supra,* 431 U.S. at 404, 97 S.Ct. at 1896, 52 L.Ed.2d at 462; *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925 (1974); *Sosna v. Iowa, supra,* 419 U.S. at 403, 95 S.Ct. 553.

◼ Nabisco argues that neither Plaintiff has alleged any specific discriminatory act occurring within 300 days of the filing of her EEOC charge and, therefore, neither has a claim cognizable under Title VII. Past discriminatory acts for which no timely EEOC charge was filed are not actionable under Title VII, even if the adverse effects of the discriminatory acts linger to the present. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

◼ The Plaintiffs have alleged, however, that they have been injured by discriminatory employment practices which continued to the date of their filing of EEOC charges, some of which continue to the present time.[11] The allegation that some of the continuing discriminatory practices have been endured by the named Plaintiffs within 300 days of their filing EEOC charges clearly presents a case or controversy as to these individuals. They likewise present a case or controversy as to the class by alleging that the class has timely suffered the same unlawful continuing practices.

◼ Consequently, Karan and Mitchell have standing to represent those other employees allegedly suffering from the same continuing practices from which Karan and Mitchell have individually claimed injury up to the filing of EEOC charges. Nabisco argues that, even so, they have no standing to represent those employees allegedly suffering from other practices which Karan and Mitchell have not timely experienced, or to challenge the practices at any bakery where they have not worked. Nabisco relies on *Oatis v. Crown Zellerbach, supra,* 398 F.2d at 499, in which the Court stated that "the issues that may be raised by [a named] plaintiff in a [Title VII] class action are those issues that he has standing to raise (i. e., the issues as to which he is aggrieved . . . ), and that he has raised in the charge filed with the EEOC pursuant to § 706(a)." Nabisco asserts that Karan and Mitchell are not aggrieved by any policy which was not applied to them, nor are they aggrieved by any practices at facilities

*pra,* 417 U.S. at 178, 94 S.Ct. 2140, but whether they have a case or controversy sufficient to satisfy the jurisdictional limitations of Article III of the Constitution. Once these representatives satisfy Article III and the class is determined by the court, the class assumes an independent status for Article III analysis. *See generally Franks v. Bowman,* 424 U.S. 747, 753–54, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). There is no question that a case or controversy is presented as to the class asserted.

10. Here, the question is whether, even though a case or controversy is presented both as to the named Plaintiffs and the class, the individuals have representative standing to present the claims of the others.

That the representatives must be members of the class is also required by Rule 23(a). See text, *infra,* at 14.

11. Those present, continuing violations allegedly personally suffered by Plaintiffs are detailed in their Affidavits and "Statement of Timeliness" filed with the Court. For example, as to job classification, Karan claims she was not able to work a "male" job until May of 1973 and that she was given unequal treatment once in that job; as to wages, Mitchell claims she can only supervise "female" jobs and as a line supervisor, a position entirely staffed by females, she is in the lowest paying supervisory position, and Karan claims she has lost overtime wages because males are given preference over her; and as to promotion, Karan claims she is even today deterred from seeking promotion to all-male jobs. The "Statement of Timeliness" also details present, continuing violations not personally suffered by Plaintiffs within 300 days of their filing of EEOC charges, for example discriminatory recruiting and hiring, which are alleged to have caused timely injuries to fellow female employees.

where they were never employed. Plaintiffs counter that once they have alleged that they have suffered from a single, permeating corporate policy of sex discrimination, they have standing to represent all those who have experienced the adverse manifestations of such discrimination in specific practices, whether or not such specific practices vary somewhat and raise different factual questions.

█ The Court agrees with the Plaintiffs. When the named plaintiffs allege that they are suffering from the symptoms of a system-wide policy of sex discrimination emanating from the central corporate administration, the injury they suffer is the same as the injury suffered by all employees similarly victimized by that policy. Plaintiffs here allege no significant differences in the operation of the alleged discrimination on the various class members. In fact, they allege that they have personally suffered from most of the same discriminatory practices as the other members of the class both at their own location and at the other bakeries. They have thus demonstrated a sufficient personal stake in the challenge of the system-wide policy and its application to the class to assure the adversity necessary for sharp and aggressive presentation of the issues as to the class and for zealous performance of their obligation to the public interest. *See Barnett v. W. T. Grant Co.,* 518 F.2d 543, 547 (4th Cir. 1975); *Rich v. Martin-Marietta Corp.,* 522 F.2d 333, 341 (10th Cir. 1975), and *Long v. Sapp,* 502 F.2d 34, 43 (5th Cir. 1974). In virtually every employment discrimination case where employment practices are challenged, the specific manifestations of unlawful discrimination will vary somewhat from individual to individual, as will the impact of any equitable relief the Court may grant. To require a representative plaintiff for each specific manifestation in circumstances such as this would be unduly burdensome and contrary to the efficiency objectives of the class action device, while adding little to the adversary nature of the controversy between the class and the defendant.

█ The fact that named plaintiffs have standing to represent the asserted class on the broad range of specific practices challenged in the complaint, however, does not mean that they are necessarily entitled to do so. Once they have shown a sufficient personal stake in the class issues to present a justiciable controversy as to the class, the inquiry shifts to whether they are proper representatives under Rule 23. *Sosna v. Iowa, supra,* 419 U.S. at 542–43, 95 S.Ct. 553. These Rule 23 requirements further assure that plaintiffs are in a proper adversary position as to the class issues to assure adequate presentation of the issues. Consequently, we conclude that Plaintiffs here, having alleged the existence of a central discriminatory corporate policy from which they themselves have been injured, have standing to represent all employees who suffer the consequences of such policy who are properly members of the class within the confines of Rule 23 on all issues determined appropriate under Rule 23.

## IV. LIMITATION OF ISSUES TO THE SCOPE OF EEOC CHARGES AND THOSE PRESENTED TO AVAILABLE STATE AGENCIES

Whether the Court has subject jurisdiction to entertain suit on behalf of all employees which the named Plaintiffs have standing to represent is also a different matter. Nabisco contends that the Court's jurisdiction is limited to those issues contained in the EEOC charges of the named Plaintiffs or reasonably related to allegations in the charges and likely to grow out of the investigation and conciliation of the charges. *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 985, fn. 11 (D.C.Cir. 1973); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970); *Trent v. Allegheny Airlines, Inc.,* 431 F.Supp. 345, 350 (W.D.Pa.1977). Likewise, it contends that the Court may properly entertain only those charges presented to the appropriate state agency, where one is available. 42 U.S.C. § 2000e–5 (1964). *See EEOC v. Union Bank,* 408 F.2d 867, 869 (9th Cir. 1969); *Trent v. Allegheny Airlines, Inc., supra; Abshire v. Chicago & Eastern Illinois Rail-*

*road Co.,* 352 F.Supp. 601, 604 (N.D.Ill.1972). Nabisco points to the EEOC charges of Karan and Mitchell, both of which give only the Pittsburgh Bakery address. The notices of charges were sent to the Pittsburgh Bakery only. And, according to Nabisco, the charges concerned only practices in effect at the Pittsburgh Bakery and these were the only subject of the conciliation. Furthermore, Karan and Mitchell filed charges with no state agency other than the Pennsylvania Human Relations Commission, and the charges before that Commission were likewise confined to the Pittsburgh Bakery.

▇▇▇ Nabisco's argument neglects the essence of the Plaintiffs' Complaint. Plaintiffs contend that they were aggrieved by the same policy as employees at other Nabisco facilities. That is, they suffered from a discriminatory policy emanating from corporate headquarters which was manifested in a wide range of symptoms at all of Nabisco's bakeries. The charges identify "Nabisco, Inc." as the respondent and throughout the charges they refer to "the company" as the source of the discrimination, and they allege a wide-ranging pattern of discrimination spanning almost the entire spectrum of employment conditions. EEOC charges are to be interpreted liberally, *Love v. Pullman,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Richerson v. Jones,* 572 F.2d 89, at 96 (3rd Cir. 1978), and the failure to list the address of Nabisco's corporate headquarters does not necessarily indicate an intention to limit the charge to a single facility, especially when the body of the charge refers to the corporate entity without limitation to a specific location.

▇▇▇ Moreover, the EEOC has an obligation to the public interest to thoroughly investigate the allegations contained in charges brought before it, and the courts have an affirmative responsibility to enforce this obligation. *Trent v. Allegheny Airlines, supra,* 431 F.Supp. at 350. Thus, this Court has jurisdiction over not only the matters specifically charged before the EEOC, but also all matters reasonably ex-

pected to grow out of the allegations contained in the charge. Given the nature of the charges here and the broad range of specific practices challenged, it would reasonably be expected that the EEOC would investigate whether the practices resulted from a centrally administered policy of sex discrimination. To permit these Plaintiffs to represent employees at their own and other bakeries who allegedly suffer from specific manifestations somewhat different from those personally suffered by Karan and Mitchell would not constitute a circumvention of the Title VII scheme of EEOC investigation and conciliation, but, rather, would encourage the EEOC to pursue aggressively its public obligation to thoroughly investigate discrimination charges to the source of the alleged discrimination. The scope of charges before the EEOC therefore does not limit this Court's jurisdiction to the Pittsburgh Bakery.

▇▇▇ Nor would the failure to utilize the state agencies appropriate for other bakery locations constitute a jurisdictional limitation on Plaintiffs' representation of a national class. That filing of charges with the EEOC and the appropriate state agency, if one exists, are jurisdictional prerequisites is well established. Also well established, however, is that plaintiffs who have fulfilled these requirements may represent those who did not, but could have done so when the representative plaintiff's charges were filed, or anytime thereafter. *Wetzel v. Liberty Mutual, supra,* 508 F.2d at 246. Congress created the requirement of filing with a state agency as a comity consideration, giving states first opportunity to solve local problems. When, as here alleged, a corporate policy transcends local bounds, and the case assumes an importance national in scope, the remedy must likewise transcend local jurisdictional limits. States are limited in power and effectiveness in controlling large corporate entities stretching across the nation, and it was for this very reason that a federal agency was created. *See* Interpretive Memorandum on Title VII, introduced by Senators Clark and Case, 88th Cong., 2d Session, 110 Cong.Rec. 7214

(1964); 110 Cong.Rec. 7205 & 12725 (1964) (Senators Clark and Humphrey). Therefore, Section 706(c) was never intended to create absolute deference to states, *See Pacific Maritime Association v. Quinn,* 465 F.2d 108, 110–11 (9th Cir. 1972), or require filing in each state before a national class can be represented. To hold otherwise would merely create needless and wasteful delay, duplication of effort and expense surely not intended by Congress. *See EEOC v. Raymond Metal Products Co.,* 530 F.2d 590, 597 (4th Cir. 1976). Thus, the failure to utilize state remedies in other states where such relief was available does not present a jurisdictional barrier to these Plaintiffs' representation of a national class.

## V. UNIONS AS INDISPENSIBLE PARTIES

Nabisco's final preliminary contention is that about 25 local unions represent employees at 11 different bakeries, that each bakery has a separate collective bargaining contract, and that the local unions at each separate facility are indispensible in the litigation of issues concerning that facility. Since the Court has power to assert *in personam* jurisdiction only over those local unions in Pennsylvania, the class cannot include employees working in Nabisco's bakeries outside of Pennsylvania.[12]

The quick answer to Nabisco's argument is that the record at this stage does not reveal that the local unions are parties indispensible to the litigation of Nabisco's liability for discriminatory practices. The Plaintiffs' Complaint does not allege any liability on the part of the local unions for the discriminatory practices challenged. Whether they are nevertheless indispensible to this litigation depends on whether they are necessary for a just adjudication, Fed.R.

Civ.P. 19(a), and, if so, whether Nabisco or the unions would unavoidably be prejudiced by proceeding without the unions, whether adequate relief can be provided without their joinder and whether the Plaintiffs would have adequate remedies if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b). These factors, of course, will depend on the unions' role in the formulation and implementation of the allegedly discriminatory practices. *See Evans v. Sheraton Park Hotel,* 4 EPD ¶ 7707 (D.D.C.1972), *aff'd in relevant part,* 164 U.S.App.D.C. 86, 503 F.2d 177 (1974).

. The local unions clearly would not be necessary to the just adjudication of the rights of non-union company employees such as Marjorie Mitchell. Nor are they necessary to the challenge of alleged discrimination in the exercise of management prerogatives which would have no impact on the collective bargaining agreement or the rights of the union. These issues would include Plaintiffs' allegations that Nabisco discriminates against women in recruitment, hiring, and job placement and classification by maintaining separate departments, primarily female and primarily male, and recruiting, hiring and placing women only in lower-level "female jobs". (Plaintiff's Class Certification Statement, at 2–5). This male-female segregation is in no way alleged to be produced by the collective bargaining contracts, nor would the non-discriminatory hiring and placement in the future or any retroactive relief affect the contract terms.

 It would appear that certain other practices challenged by Plaintiffs implicitly involve the collective bargaining agreements, at least insofar as relief could affect the rights of non-class employees under the agreements, and the unions may have an interest in these challenges. These issues

---

**12.** Nabisco also contends that because Local 12–A of the American Bakery and Confectionary Workers was the only union named in an EEOC charge, the Court lacks subject jurisdiction over the other locals and they could not be joined by the Court. This argument has been rejected by the courts, however, when joinder of the unions would be for effectuating ade-

quate relief or protecting their interests, and not to impose liability against them. *EEOC v. McLean Trucking Co.,* 525 F.2d 1007 (6th Cir. 1975); *Evans v. Sheraton Park Hotel,* 164 U.S. App.D.C. 86, 503 F.2d 177 (1974). *See Teamsters v. United States, infra,* 431 U.S. 324, at 356, n. 43, 97 S.Ct. 1843, at 1865, n. 43, 52 L.Ed.2d at 428, n. 43.

would include job transfers, promotion, job bidding, layoff and recall, salary and compensation, absenteeism and lateness policies, and certain other conditions of employment. Again, the basis of these charges rests in Nabisco's unequal application of neutral contract provisions and does not implicate the unions as to liability. The relief, if any, would not compel revision of these contract terms; only their application to individuals as ordered by the Court. The unions' interest in these challenges would arise from their desire to assist in formulating a relief equitable to all their members and to aid in implementing any court order. Their participation would not be necessary for effective relief, although it would be helpful to the Court and the parties. Nor would any union rights be jeopardized by their lack of participation. Thus, the unions are not indispensible to the challenge of these employment practices.

■ A final category of charges goes directly to specific contract provisions in the various contracts. These are the challenges of benefits provided under the contracts, and of the seniority systems established in the contracts. When specific contract provisions have been challenged and appropriate relief would require revision of those provisions, it has been held that the union bargaining agent is an indispensible party. *See Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78, 86 & fn. 11 (S.D.N.Y.1973) and cases cited therein. Whether an absent party is indispensible, however, depends on the practical context of each particular case. *Id.* The only benefits identified by these Plaintiffs are the maternity leave (Karan's EEOC charge), the denial of full dependent coverage to spouses of women, and the automatic classification of the wife as dependent for health benefits when both husband and wife are employees (Plaintiffs' Class Certification Statement, at 7–8). These provisions are in Karan's contract of employment at the Pittsburgh Bakery and would involve only Local 12–A. Apparently, spouses of women are now given full dependent coverage, so this issue would require no contract revision. It is difficult for the Court to imagine how the union

would be prejudiced if it were to order revision of the contract to permit the husband and wife to choose which is the dependent for health benefits. And the Court has no indication of the basis for the maternity leave charge and whether it would in any involve contract revision. At this point, no other contract provisions are identified and the Court has no basis to determine which, if any, unions would possibly be prejudiced or needed for adequate relief. If additional provisions are identified in discovery involving other unions, the Court will address the issue of indispensibility and joinder at that time.

■ The claim of discrimination in the seniority system is twofold: first, it is intentionally used to discriminate against women, and second, it perpetuates past acts of discrimination. The operation of a bona fide seniority system neutral on its face is not a violation of Title VII, even if it perpetuates past acts for which no timely EEOC charge was filed. *Teamsters v. United States,* 431 U.S. 324, 352, 97 S.Ct. 1843, 1863, 52 L.Ed.2d 396, 426 (1977); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). And, if the challenged practices may be timely charged before the EEOC, there is no need to challenge a neutral system. *Teamsters v. United States, supra,* 431 U.S. at 348, 97 S.Ct. at 1861, 52 L.Ed. at 423. If the seniority system is used for a present discriminatory purpose, however, it is not a bona fide system entitled to exemption from Title VII application. *United Air Lines, Inc. v. Evans, supra,* 431 U.S. at 560, 97 S.Ct. at 1890, 52 L.Ed.2d at 580; *Teamsters v. United States, supra,* 431 U.S at 352, 97 S.Ct. at 1863, 52 L.Ed.2d at 426.

■ Plaintiffs have not alleged that the unions participated in the discriminatory use of the seniority systems, and the record at this point fails to implicate them in any way. It would be premature for the Court to say at this point that continuing without the unions would subject them or Nabisco to prejudice. Again, if we award retroactive seniority for certain individuals, as we

may be required to do, *see Franks v. Bowman,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), the unions will have an interest in the relief. But they are not essential to the ordering of such relief.

■ The unions are therefore not indispensible parties. Nor does the Court perceive their participation at this point to be necessary for just adjudication so that those unions whose joinder is feasible should be ordered joined by the Court.[13] Their participation in this suit, however, could be helpful to the parties and the Court and may be in the unions' best interests. The Court will therefore order Plaintiffs, at the joint expense of the parties, to give all local unions representing members of the class delineated in this determination notice of the pendency of this action, and the Court will entertain any motions to intervene which they may make. *See EEOC v. American Telephone & Telegraph Co.,* 506 F.2d 735, 741 (3rd Cir. 1974).

## VI. RULE 23 CLASS REQUIREMENTS

■ We now turn to the specific requirements of Rule 23(a) and (b) for class representation. These are the requirements that the representative plaintiffs be members of the class they seek to represent, that they raise common questions of law or fact, that their claims be typical of those of the class, that they be capable of fairly and adequately representing the interests of the class, that the class be too numerous for joinder of all individuals, and that the defendant acted on grounds generally applicable to the class.

### A. Members of a Class

■ Inherent in the Rule 23(a) phrase "one or more members of a class may sue or be sued as representative parties" is the requirement that there be a class and the representative plaintiffs be members of that class. A class must be sufficiently homogeneous and definable that those to be bound by the judgment are capable of determination. To be a member of this class, both Rule 23(a) and Article III of the Constitution (See text, *supra,* at 397) require that the representatives share the common class characteristics, fit within the definable limits, and suffer the discrimination against which the class suit is directed. The class of female employees and job applicants at Nabisco's bakeries after January 21, 1973 is a sufficiently definable and homogeneous group to constitute a class, and, as present employees of Nabisco who claim to have been injured by the same discriminatory corporate policies as other female bakery employees, the Plaintiffs here are similarly situated with the other class members. See text, *supra,* at 399.

### B. Common Questions of Law or Fact

■ Rule 23(a)(2) provides that a class member may sue as representative of the class only if "there are questions of law or fact common to the class". Their claims need not be identical to those of every class member, and in a Rule 23(b)(2) class action the common questions need not predominate the suit. The common questions of law or fact, however, must be substantial enough that judicial economy and convenience to the parties favor a single suit, and that the common questions are not obscured by a multitude of unique factual and legal determinations.

■ The common question in a Title VII case challenging an alleged system-wide policy of sex discrimination is whether such discrimination was practiced. *Senter v. General Motors Corp., supra,* 532 F.2d at 524; *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 at 255. To satisfy their burden of establishing commonality, however, Plaintiffs must do more than merely

---

**13.** Should it become apparent in later stages that the unions' rights will be affected or they will be necessary for relief, Plaintiffs suggest the Internationals, over which the Court could assert *in personam* jurisdiction, be joined. At this point, the Court does not even know what Internationals would be involved and if there would be a basis for jurisdiction over them. But this is one approach the Court could consider if future events reveal the need for union participation.

allege the existence of such a pervasive policy injuring the whole class. They must identify some reasonable basis, beyond mere conjecture or suspicion, to support their allegation. We again emphasize that, by requiring such a showing at this point the Court is not compelling Plaintiffs to make out a prima facie case as to the class, to show a likelihood of success on the merits, or even to prove any facts as to the class. The Court is simply requiring that in order to establish the existence of questions common to the whole class, they give some indication that the policy they challenge was applied to the whole class and was not an isolated occurrence.

The burden is easily met in many Title VII cases. For example, if Plaintiffs challenge several employment practices at a single facility, it would be a reasonable inference that all similarly situated employees at that plant likewise suffer actual or threatened injury because the basis of the discrimination, sex, is a class-based characteristic and the employees work under substantially identical circumstances. Or, if specific terms of employment which are uniformly applied at all facilities are challenged on behalf of a nationwide class as discrimination based on sex, the logical inference is that all members of the class subject to those terms have suffered similar injury.

Plaintiffs must make more of an affirmative showing, however, when, as here, the members of the purported class work at various locations throughout the country, at all but one of which none of the representatives have ever worked, and the specific terms, conditions and practices of employment are not uniform. Plaintiffs could reasonably believe under these circumstances that the discrimination they suffer is not isolated to their location, but is a system-wide policy, if they have evidence that although local terms and practices vary, they are imposed or supervised by a central administration, that central administration knew of the discriminatory practices and permitted them to continue, that statistical evidence showed a consistent pattern throughout the system, or that class members at the other locations have made similar charges. Thus, some evidence of any of these could sustain Plaintiffs' threshold burden of showing commonality.

Nabisco insists that Karan and Mitchell have not met this burden. It contends the record reveals a lack of commonality, that each of Nabisco's 11 bakeries fashions and applies its own terms and conditions of employment, recruits, hires and places its own personnel and bargains separately with different local unions in contract negotiations resulting in non-uniform contracts of employment, (See Defendant's Response to Class Certification Statement and Defendant's Answers to Class Interrogatories at 23–46), and that statistics relied upon by Plaintiffs are improperly applied and, at any rate, reveal inconsistencies from plant to plant. (See Defendant's Response to Class Certification Statement, at 9–18, and Exhibit 1 therein).

On the other hand, Plaintiffs argue that, while the specifics of implementation may vary, the record sufficiently suggests a pattern of sex discrimination common enough at least to warrant further discovery as to all Nabisco's bakeries. They allege that the practice of sex discrimination is pervasive at the Pittsburgh Bakery, and the corporate headquarters must have at least known of and permitted to exist these unlawful practices. In addition, their initial statistics (based on Nabisco's EEO–1 Reports) suggest a consistent pattern among the bakeries of underrepresentation of women in skilled jobs (EEO categories of "Officials and Managers" and "Craft Workers") which, when compared with the excessive proportion of women in semi-skilled and unskilled jobs (EEO categories such as "Operatives" and "Laborers") is consistent with Plaintiffs' allegations of discrimination in recruiting, hiring, placement, job classification and wages at the Pittsburgh Bakery and evidences corporate-wide practice. (See Plaintiffs' Class Certification Statement, at 12–15). They contend that a more specific breakdown of job categories after discovery could more accurately reveal the commonality of questions presented. They

also point to the fact that EEOC charges have been filed by women at other bakeries, and that Nabisco entered into a settlement concerning their Atlanta Bakery where female employees had alleged the existence of the same practices as Plaintiffs here challenge at the Pittsburgh Bakery. (See Plaintiffs' Class Certification Statement, at 15–16, and Exhibit A attached thereto). Finally, the record shows no reason to believe that the Pittsburgh Bakery is unique or that the employees there perform such unique jobs that the facts would require materially different legal analysis from that required for other bakeries.

Plaintiffs have thus shown a reasonable basis for their allegation of a nationwide policy of sex discrimination and the existence of questions common to a national class. The Court declines as Defendant would have us do, to determine the legal sufficiency of any of the above factors, nor do we make any factual findings thereon. The Court is simply satisfied that the allegation is not frivolous and that common questions will therefore necessarily arise which the Court will address on the merits at trial. While diverse factual and legal issues will undoubtedly arise in the course of the litigation, it does not appear at this time that the Court will be confronted with a multitude of individual factual patterns obscuring the common questions.[14] Plaintiffs have therefore met their burden of establishing this Rule 23 requirement.

### C. Typicality of Claims

Rule 23(a)(3) provides that the class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class". The typicality requirement is closely interrelated with the concept of commonality and much of the same analysis could be repeated. Some courts have indicated that this requirement adds nothing to the class analysis since it involves factors inherent in other Rule 23 requirements. See 3B Moore's Federal Practice, ¶ 23.06–2, at 325. While certainly related to other

requirements, the Court perceives the typicality requirement as directing an analysis into whether the factual and legal situations of the representatives are similar to those of the rest of the class so that an inordinate emphasis will not be placed on their unique individual circumstances, and whether their contentions concerning the common factual and legal issues are similar to those of the class. In other words, the typicality requirement weeds out the unique representative, see 7 Wright, Federal Practice and Procedure, § 1764 at 614, and thus requires a comparison of the representatives' claims with those of the class. *Harriss v. Pan American World Airways, Inc., supra,* 74 F.R.D. at 42.

The present record reveals no uniqueness in Plaintiffs' jobs as compared to those of other class members or in the function and operation of the Pittsburgh Bakery as compared to other bakeries, nor does it reveal any other factual circumstances surrounding Plaintiffs' individual allegations which would require an inordinate detraction from the litigation of the common class factual and legal questions at trial. Plaintiffs' proof of facts would be similar to or identical to those of other class members, their contentions as the facts would be similar, as would the argument concerning the legal application of Title VII to these facts. Their claims are therefore typical of those of the class.

### D. Fair and Adequate Representation of the Class

Rule 23(a)(4) permits maintenance of the suit as a class action only if "the representative parties will fairly and adequately protect the interests of the class." This requirement has assumed significant importance since amendment of the class action rules with stricter *res judicata* effects, *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968), especially in Rule 23(b)(2) suits in which individual notice is not required, and it is this consideration which causes the Court the gravest concern in determining here if this action can be maintained on behalf of the class asserted.

---

**14.** See text, *infra,* at 407.

▮▮▮ Whether Plaintiffs can adequately represent the interests of the class must be considered under all the circumstances of the particular case. *Wetzel v. Liberty Mutual Insurance Co., supra,* 508 F.2d at 247. The Court must assure that no danger of collusion on certain class issues exists, that no class issues be ignored, that the case be competently presented in an orderly manner, and that the issues are capable of being fairly and thoroughly tried in a single suit. Relevant considerations would include the importance of the common class questions to Plaintiffs' individual claims, whether Plaintiffs' individual interests are antagonistic to the interests of the class, the extent to which the Court can assure that any antagonism that may exist will not affect presentation of the class issues, Plaintiffs' familiarity with the circumstances of the other class members, resources required to pursue properly the litigation as to the class asserted, whether geographically dispersed class members would have to be in close contact with counsel for proper presentation of their claims, and the competence, experience and zeal of Plaintiffs' counsel.

▮▮▮ Also of fundamental importance to adequate representation of the interests of the class is the manageability of the suit if maintained on behalf of the asserted class. *See Hill v. American Airlines, Inc.,* 479 F.2d 1057, 1059 (5th Cir. 1973). Although not listed as a specific consideration for 23(b)(2) suits as it is in 23(b)(3) actions, the concept of manageability is inherent in adequate protection of the interests of the class.[15] Only if counsel and the Court can adequately entertain and analyze all of the issues concerning the whole class can the class interests be protected and the remedial objectives of Title VII be served. Unmanageable cases may not only be a disservice to Title VII policies and adequate protection of individual class members' claims, but they may cause excessive delay in final resolution of the case, to the prejudice of all involved, and disrupt the judicial economy objectives of the class action device.

In the instant case, Plaintiffs certainly could prevail on their individual claims without litigating the question of whether the source of the discrimination was a system-wide Nabisco policy of sex discrimination. However, this statement would be true in most class action situations. Plaintiffs have alleged that their injury was caused by a centrally administered policy and they have demonstrated a vital interest in challenging that policy. The competence, experience and zeal of Plaintiffs' counsel in doing so has not been questioned. Plaintiffs' individual contentions and claims are in no way antagonistic to those of the class in litigating the question of the liability of Nabisco. Nor does there appear at this time to be substantial antagonism in individual relief which the Court may order. If such antagonism does appear in later stages, however, the Court can reduce its impact on the presentation of the class issues by bifurcating the trial on liability from the hearing on individual relief that may be appropriate and re-examining the scope of the class at that time. *See Harriss v. Pan American Airways, Inc., supra,* 74 F.R.D. at 37. The Court could also consider creating sub-classes or limiting the issues. And, although Plaintiffs are not familiar

---

15. Rule 23 does not separately state manageability as a consideration for 23(b)(2) suits as it does in 23(b)(3) suits, and in *Eisen v. Carlisle & Jacquelin, supra,* the Supreme Court treated adequate representation and manageability separately, calling manageability a much more difficult consideration in 23(b)(3) actions, 417 U.S. at 165, 94 S.Ct. 2140, incorporating "the whole range of practical problems that may render the class action format inappropriate for a particular suit." 417 U.S. at 164, 94 S.Ct. 2140, 2146.

Rule 23(b)(3) class actions may, by their nature, present manageability concerns not present in 23(b)(2) suits and which do not affect the ability to represent the class but do affect consideration of whether the class suit is superior to other methods of adjudication as is required by Rule 23(b)(3). These concerns generally involve whether relief could ever reasonably be formulated, even if the class is adequately represented. However, manageability insofar as being able to present all the issues properly, and conduct proper discovery within reasonable time periods and within the financial resources of the parties is inherent in the Rule 23(a) concept of adequacy of representation as required in both (b)(2) and (b)(3) suits.

with the specific circumstances of class members at other bakeries, they are familiar with the general type of work and job requirements and can assist counsel in that regard.

What is not apparent from the record at this early stage is whether the suit on behalf of the national class will require extensive individual proof and discovery requiring resources and time not reasonably available to Plaintiffs and their counsel, and whether the case can proceed manageably to a just result within reasonable time limits. Much will depend on the nature of the statistics developed by the Plaintiffs early in discovery on the merits. Much of their case may be amenable to use of aggregate statistics with supportive individual testimony. If so, the case would appear to be manageable and Plaintiffs could adequately protect the class, although even if such is the case the task before them is an ambitious one. If it appears, however, that the case must be established by voluminous testimony about individual and widely diverse circumstances, proceeding in a single suit here would be unduly time consuming and unfair to the individuals involved who would have to travel great distances, and neither counsel nor the Court could give sufficient attention to all of the issues to do justice to the parties.

When the Court has required an early class determination on an incomplete record and such questions arise, the preferable course is to permit discovery to continue as to the national class rather than prematurely to exclude the class. *See Jones v. Diamond, supra,* 519 F.2d at 1098; *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir. 1972). The Court can modify the class as needed when discovery and trial add relevant facts to the record. The Court concludes that on the basis of the present record, then, Plaintiffs have met their burden of demonstrating their ability to protect the interests of the class.

### E. Additional Requirements

From the foregoing discussion, it is apparent that the requirements of numerosity, Fed.R.Civ.P. 23(a)(1), have been met, and also that the Defendant acted on grounds generally applicable to the class. Fed.R.Civ.P. 23(b)(2). To satisfy the numerosity requirement, Plaintiffs do not have to show the exact number of members of the class, merely that joinder of all individual members in one suit would be impracticable. They have done so. If they prove that Nabisco implemented a national policy of sex discrimination at its bakeries, it is also clear that Nabisco acted on grounds generally applicable to the class.

### V. CONCLUSION

Plaintiffs have therefore met their burden of establishing that the Rule 23 requirements for their representation of the class they assert in their Class Certification Statement are satisfied. Nor are there jurisdictional limitations requiring the Court to limit the class. The Court will therefore order that the action be maintained on behalf of the class asserted. The Court wishes to emphasize, however, that this determination is tentative and subject to modification. Should Plaintiffs discover that their task is too burdensome, the Court will certainly entertain a motion to reduce the class. The Court will also closely monitor the subsequent discovery and will modify the class if the developing record so warrants.