Accordingly, judgment will be entered for defendants.

**Clarence TRENT et al., Plaintiffs,**

v.

**ALLEGHENY AIRLINES, INC. and International Association of Machinists and Aerospace Workers, Local 1976, Defendants.**

**Civ. A. No. 76–1536.**

United States District Court, W. D. Pennsylvania.

May 6, 1977.

Clifford C. Cooper, Pittsburgh, Pa., for plaintiffs.

Bernard D. Marcus, Kaufman & Harris, Pittsburgh, Pa., for Allegheny Airlines.

Joseph M. Maurizi, Balzarini, Walsh & Maurizi, Pittsburgh, Pa., for Union.

## OPINION

SNYDER, District Judge.

On December 9, 1976, Plaintiffs, all Blacks and one a female, filed suit against their employer, Allegheny Airlines, and the International Association of Machinists and Aerospace Workers Local 1976 (hereinafter the Union), alleging race and sex discrimi-

nation in hiring, job classification, compensation and employment conditions, all in violation of 42 U.S.C. § 2000e.[1] The suit was initiated within 90 days of Clarence Trent's receipt of a "right to sue" letter from the EEOC.[2] This "right to sue" letter indicates that the EEOC determined that it lacked jurisdiction because the charges were untimely.

Both Defendants have moved to dismiss for lack of subject matter jurisdiction. Allegheny contends that Mr. Trent did not file his charge with the EEOC within 300 days of the date of discrimination, and thus Mr. Trent and all the other Plaintiffs whose suits depend on the Trent charges to satisfy the statutory requirements of § 2000e–5(e) are jurisdictionally barred. The Union contends that it was not named as a respondent in Mr. Trent's charges with the EEOC, and therefore the Court lacks jurisdiction over the suit against it.

## I. TIMELY FILING OF CHARGES WITH THE EEOC

■ Allegheny correctly asserts that the timely filing of charges with the EEOC is a jurisdictional prerequisite to employment discrimination suits in federal court. 42 U.S.C. § 2000e–5(e); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To determine the timeliness of filing, however, it would have this Court defer to the EEOC's determination of timeliness and dismiss the Complaint; or it argues that at least the EEOC

1. Although the caption of the Complaint indicates suit by only the named individuals, the body of the Complaint also contains a separate section entitled "Class Action". Because of the disposition of the case, we need not consider whether the class action has been properly pleaded.

2. Plaintiff George Miller also filed charges on November 24, 1976, but he has not received a right to sue notice from the EEOC.

3. Pursuant to Leave of Court, Plaintiffs supplemented the Complaint with a copy of the affidavit filed by Mr. Trent in support of his charges. Although the original charges were not included in the pleadings and the Court has

decision places an affirmative obligation on the Plaintiffs to allege in the Complaint specific facts to negate the EEOC determination, and that here Plaintiffs have failed to even allege a timely filing with the Commission.

■ While the EEOC's expertise in Title VII cases may entitle its interpretations of the Act to deference by the courts, its findings do not determine the scope of federal court jurisdiction. The court must determine its jurisdiction. *Belt v. Johnson Motor Lines, Inc.*, 458 F.2d 443 (5th Cir. 1972); *See Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 986 (1973). Here, we have no indication whatsoever of the basis for the EEOC's conclusion that the charges were untimely. On the other hand, the affidavit[3] filed by Mr. Trent in support of his charges shows that the charges were in fact timely. In summary, the affidavit alleges that:

1. When Trent first sought employment as a mechanic with Allegheny Airlines in 1964, he was rejected because he was Black. He was later hired with the assistance of a maintenance supervisor whom he had met. (pp. 1–2)

2. Despite good evaluations as a mechanic, he was demoted to cleaner. When he tried to upgrade as a mechanic in 1966, at a time when Whites with automotive experience were being upgraded, he was told he needed two licenses to qualify for the job. The Union Contract said no licenses were required. During that time, no Blacks were hired on as mechanics without licenses. (pp. 3–4)

no indication of what was included therein, the nature of the EEOC charge forms and the EEOC dismissal for lack of jurisdiction would suggest that the charges were more summary in nature and narrower in scope. However, the purpose of filing supporting affidavits is to set forth in more detail the factual background instigating the charges. The affidavit therefore helps define the scope of the charges and the extent of the EEOC's investigation which should grow out of the charges, and it may be used to determine the timeliness of filing, and the proper scope of subsequent suit in court. *See text, infra*, at 4–6.

3. Trent studied and obtained his license and was hired as a mechanic (after he had filed charges with the EEOC, but before filing the affidavit).

4. Trent has lost five years seniority because of this discrimination, and this loss of seniority and the present use of the seniority system now discriminatorily deprives him of premium jobs, shifts, and days off. (p. 4)

5. The International Association of Machinists and Aerospace Workers, Local 1976, did nothing to help him. (p. 4)

6. Trent was harassed by foremen and fellow employees. (pp. 5–6)

7. Several other named Blacks have been treated unfairly (the other Plaintiffs in this suit). (p. 6)

8. Allegheny doesn't seem to want to hire or upgrade Blacks. Out of 450–500 mechanics, only three are Black. There are 7 or 8 cleaners who are Black; six of them are demoted mechanics who were hired in the last few years because Allegheny was going to be demonstrated against. Their seniority as mechanics started almost two years after they were hired. (pp. 6–7)

9. Trent could be a head mechanic or inspector if he weren't being held back because of his race. (p. 8)

Certainly, this affidavit focuses largely on specific acts of discrimination occurring in 1964–66, and the precise nature of the charges is often vague. But courts must be mindful of the nature and purposes of individuals' charges and affidavits filed with the EEOC. They are filed, most often without assistance of legal counsel, for the purpose of initiating investigation and conciliation efforts by the EEOC. We can neither demand nor expect the same sufficiency and clarity in such affidavits that we would demand in a complaint to initiate a lawsuit. Treating the Trent affidavit as an illucidation of the basis and scope of the charges filed, we therefore conclude that by alleging that Allegheny has in the past and presently discriminates against Blacks in hiring and job classification, and that he is being deprived of his rights due to a loss of seniority because of such discrimination, Mr. Trent has charged Allegheny with a pattern of continuing discrimination. *See Evans v. United Airlines, Inc.*, 534 F.2d 1247 (7th Cir. 1976) (loss of seniority which perpetuates past acts of discrimination is a continuing violation); *Macklin v. Spector Freight Systems, Inc., supra* (discriminatory hiring system is a continuing violation); *Belt v. Johnson Motor Lines, Inc., supra* (discriminatory system of transfer to better jobs is a continuing violation). His allegations of specific past acts of discrimination against him constituted a part of that alleged discriminatory system continuing to the present. When the charge alleges such a pattern of discrimination continuing to the date of filing, the charges are timely filed. *Macklin v. Spector Freight Systems, Inc., supra; Belt v. Johnson Motor Lines, Inc., supra; Bartmess v. Drewrys U. S. A., Inc.*, 444 F.2d 1186 (7th Cir.), *cert. denied* 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971); *Cox v. U. S. Gypsum Co.*, 409 F.2d 289 (7th Cir. 1969). Consequently, the inclusion of this affidavit with the Complaint filed in this Court, coupled with the specific allegation of continuing violation in the Complaint, suffices to plead a filing with the EEOC within 300 days of the alleged discriminatory acts.[4]

Although in some instances it might be appropriate for a court to conduct a separate hearing to determine certain facts essential for its subject jurisdiction, when continuing discrimination is alleged to create a jurisdictional basis, such a procedure would not here be appropriate. The jurisdictional fact of whether there was a continuing discriminatory system necessarily involves the same testimony and findings as the trial on the merits. The more efficient course, then, would be to proceed to trial. Of course, if the evidence at trial were to indicate that at most the Defendants com-

---

4. When the state has an agency which is authorized to grant or seek the relief requested, the time for filing with the EEOC is extended from 180 to 300 days to permit utilization of the local process. § 2000e–5(e). Since Pennsylvania has such a Human Relations Commission, 43 P.S. § 951 *et seq.*, the 300 day period would apply here.

mitted discriminatory acts which were not part of any continuing pattern of discrimination, the Court would at that time dismiss for lack of subject jurisdiction.

## II. SUBJECT JURISDICTION OVER THE CLAIM AGAINST THE UNION

■■■ The Union asserts additionally that this Court lacks jurisdiction over the claim against it because it was not "named" as a respondent in the charges filed with the EEOC or in the "right to sue" notice. *See* § 2000e–5(f)(1). Ordinarily, the scope of the court suit is determined not only by the content of the charges filed with the EEOC, but also by the facts alleged and the scope of the EEOC investigation reasonably expected to grow out of the charges. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir. 1976); *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Although this standard is usually applied when the scope of the suit against a defendant exceeds the scope of the charges filed with the EEOC against that same defendant, it likewise provides an appropriate standard for determining what parties may be sued. The important consideration in determining whether a plaintiff has exhausted his administrative remedy is whether he timely filed charges with the EEOC which reasonably afforded the EEOC the opportunity to investigate and attempt to conciliate the matter which is now the subject of suit. When the facts alleged in the affidavit filed in support of the charge identify and necessarily implicate a third party, the EEOC is thereby apprised of that party's involvement and is afforded the opportunity to investigate and initiate conciliation efforts with that party before the plaintiff resorts to the courts. Indeed, the EEOC's responsibility to protect the public interest imposes a duty on it to investigate reasonable implications of discriminatory conduct by third parties identified in the factual allegations brought before the Commission.

■ Application of this standard to determine who may be sued also encourages the EEOC to exercise this duty to investigate and conciliate expeditiously and productively. The identification of all parties implicated in the charges would put the matter in perspective in a unified investigation and avoid repetitive efforts by the Commission. An involvement of all parties responsible for the discrimination and necessary to fashion a workable conciliation remedy should make meaningful conciliation more likely. The burden of identifying as respondents the parties legally responsible and necessary for meaningful relief should not fall entirely on the aggrieved employee. One of the purposes of the Act is that these employees derive the benefits of EEOC expertise in such matters. The burden on the employee is to set forth the facts which reasonably enable the EEOC to do this.

■ For these reasons, we conclude that a plaintiff has "named" all parties who were reasonably identified in the factual allegations and who should have been the object of an EEOC investigation which would reasonably arise out of charges timely filed with the Commission. The fact that the EEOC failed to conduct such an investigation should not bar a plaintiff from his remedy in the courts. We therefore must examine the facts alleged in the Trent affidavit to determine whether in this case these allegations should reasonably have launched an EEOC investigation of the Union's participation.

■ The affidavit charges Allegheny with utilizing discriminatory job classification and seniority systems, among other things. The only reference to the Union in the affidavit appears on page 4 and states, "The International Association of Machinists and Aerospace Workers did nothing to help me, which is our local # 1976." Although the reference may at first appear off-handed, the Union is directly involved through contract negotiations with implementing systems of job classification and seniority benefits. Moreover, the failure of a Union to assist a member in correcting

discriminatory employment practices that it knew about, or should have known about, has been held in violation of Title VII. As stated in *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 314 (6th Cir. 1975):

> "It has long been settled that a union must attempt to protect its minority members from discriminatory acts of employer. *Steele v. L. & N. R.R.*, 323 U.S. 192, 199, 65 S.Ct. 226, 89 L.Ed. 173 (1944). This obligation requires a union to assert the rights of its minority members in collective bargaining sessions, and not passively accept practices which discriminate against them. *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 989 (1973). Acquiescence in a departmental seniority system which produces unequal treatment on the basis of race is sufficient to subject a union to liability under Title VII. *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1381 (5th Cir. 1974)."

Consequently, this allegation by Mr. Trent in his affidavit for all practical purposes identified the Union as a respondent and should reasonably have caused the EEOC to investigate a discriminatory practice by the Union. On this basis, then, the Union is a proper party in this suit.

### III. EXHAUSTION OF THE STATE REMEDY

Having disposed of the jurisdictional issues raised by the parties, and finding that none of them bar jurisdiction in this Court, we are compelled to turn to another subject jurisdictional matter not raised by the parties. Section 2000e–5(c) provides that in states that have state agencies with authority to seek or grant the relief requested, charges must be filed with that state agency to give the local officials an opportunity before charges may be brought with the EEOC to resolve the matter. Normally, when an aggrieved employee fails to exhaust his state remedy before filing with EEOC, the EEOC will defer the charges to the state agency on behalf of the charging employee. 29 C.F.R. § 1601.12. The EEOC will then assume jurisdiction after the earlier disposition by the state agency, or the expiration of 30 days. *Id.* The Supreme Court has approved of this procedure to satisfy the state exhaustion requirement for the employee. *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Thus, it has been held that pleadings are sufficient if they allege a timely filing of charges with the state agency or EEOC, or include a copy of the charges filed with the state agency to show the state remedy was exhausted. *See Baker v. California Land Title Co.*, 507 F.2d 895 (9th Cir.), *cert. denied*, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1972). Similarly, an allegation of timely filing with the EEOC and a copy of the EEOC's deferral letter to the state agency would also suffice. In this case, however, the Complaint neither alleges compliance with all jurisdictional prerequisites nor contains any document to evidence that the charges were either initially brought before the Pennsylvania Human Relations Commission or were deferred to the State Commission by the EEOC pursuant to EEOC regulations.

Under these circumstances, we must dismiss the Complaint without prejudice to renew in order to show state exhaustion or to renew the suit upon first exhausting the state remedy and then properly presenting the charges to the EEOC for conciliation and investigation. Since there is no allegation that Mr. Trent's charges satisfied the administrative exhaustion requirements, the suits of all other Plaintiffs also must fall because they depend on his charges to satisfy the statutory requirements for subject jurisdiction. We note that, by doing so, Plaintiffs are not practically barred from any successful administrative remedy or subsequent court remedy because of the lapse of time between the alleged discriminatory acts and the filing of charges. Since the only basis for suit in this Court was the allegation of continuing discrimination, they will not be prejudiced. If the discrimination is continuing, their charges will be timely since all are currently employed by Allegheny and are members of the Union. The Court urges that this time around, with the assistance of counsel, the charges and

the bases for them be clearly presented to the administrative agencies in the hope that meaningful investigation and, if necessary, conciliation ensues. That is, after all, the goal of Title VII proceedings.

An appropriate Order will be entered.