Calvin SETTLES, Plaintiff,

v.

PINKERTON, INC., Defendant.

Civ. A. No. 79–1238–5.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 12, 1979.

Calvin Settles, pro se.

William C. Hubbard, Columbia, S.C., for defendant.

## ORDER OF DISMISSAL

HEMPHILL, District Judge.

By a motion filed July 30, 1979, (with an amended notice of motions supplementing and filed on August 6, 1979) defendant moves to dismiss the complaint for lack of jurisdiction of the subject matter pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that (a) the complaint fails to allege exhaustion of state and federal administrative remedies prior to the institution of suit; (b) that the complaint fails to state how this court has jurisdiction if the Equal Employment Opportunity Commission[1] did not have jurisdiction of the claim. Additionally, defendant seeks dismissal for failure to state a claim insisting (c) the complaint fails to specify allegations necessary to establish a cause of action under due process clause of the Fifth and Fourteenth Amendments to the Constitution, a statutory cause of action under 42 U.S.C. § 1983, or a statutory cause of action under Titles VII of the Civil Rights Act of 1964. For a clear picture of the status of this file, a chronology is necessary.

On July 5, 1979, plaintiff, pro se, filed his "complaint" stating:

> Under the jurisdiction of the Civil Rights Act of 1964, Due Process and my Civil Rights have been violated because of Racial Discriminatory actions by Pinkerton, Inc.
>
> I (Calvin Settles) was dismissed from my job at Pinkerton, Inc., because of Racial Discrimination. This cause me mental distress, financial hardships, and privation.
>
> I am seeking full financial restitution and punitive damages.

Previous to his filing the complaint he had filed with the EEOC a "charge of discrimination" on the Commission's Form 5a, which resulted in the Commission later issuing its Notice of Right to Sue (Dismissal) on April 20, 1979; that charge was dismissed for the following reasons:

No jurisdiction, therefore the Commission had no authority to process your charge further.

Apparently, after receiving the EEOC dismissal, on May 15, 1979, he filed in this court his application under Section 706(f) of the Civil Rights Act in which he asked for the appointment of an attorney and authority to proceed *in forma pauperis*. By order filed June 15, 1979, the United States Magistrate, to whom the matter was referred, refused to appoint counsel because of petitioner's failure to make any independent effort to obtain an attorney, but allowed him to proceed *in forma pauperis*. After the motion was filed on July 30, the Magistrate issued an order stating that the Magistrate would "consider the Motion based on applicable legal principles as to whether the Plaintiff had failed to state a claim upon which relief may be granted" and further that the "Plaintiff will have a period of thirty-four (34) days from the date of this Order within which to file and serve by mail on Defendant's attorney any objection he wishes to file to the Defendant's Motion.[2] On August 28, 1979, the Magistrate filed another order noting that, since the motion to dismiss filed on July 30, 1979, the defendant had submitted affidavits supporting its motion, and, citing *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), giving the plaintiff the information directed by that opinion and giving him thirty-four (34) days, one month plus four (4) days mail time, to file any material he wished; extracts from Rule 12 and Rule 56 of the Federal Rules, and an explanation of summary judgment procedure was attached to the order and served on plaintiff by mail. On September 7, 1979, plaintiff filed his Notice of Motion "to administer Plaintiff's claim" stating the same thing as in his original complaint accompanied by a conclusory affidavit as to discrimination. No oth-

---

1. Hereinafter EEOC.

2. The order further provided that "objections may be in the form of a brief containing legal argument, or argument as to facts involved, in view of the fact that the Motion of the Defendant's is based on legal principles rather than affidavits. However, the Plaintiff may file affidavits as to facts he believes to be material if he desires to do so."

er supporting or refuting affidavits were furnished by the plaintiff.

## SUBJECT MATTER JURISDICTION UNDER 42 U.S.C. § 2000e–2

 This court is not certain but that plaintiff is attempting to state a claim pursuant to 42 U.S.C. § 2000e–2, but if he is, this court has no jurisdiction because plaintiff failed to allege in his complaint the exhaustion of available state remedies. Although he must also exhaust federal administrative remedies, which he has not alleged in his complaint, defendant did not pursue this because of the attaching of the "Right to Sue" letter from the EEOC Form 5a to his complaint.

Admittedly, 42 U.S.C. § 2000e–2 advises in part:

(a) It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

It is further provided at 42 U.S.C.A. § 2000e–5(c):

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day periods shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authorities.

It is obvious that the intent of the above-cited statute is to require a plaintiff to exhaust state administrative remedies, if any be available, before proceeding in the federal forum, and that the pursuit of available state remedies is required before this court has jurisdiction of any claim under 42 U.S.C. § 2000e–2. As stated in *Abshire v. Chicago & Eastern Illinois Railroad Co.*, 352 F.Supp. 601 (N.D.Ill.1972):

Thus, it is the opinion of this Court that where substantial relief against alleged discrimination is available under state law, the person aggrieved must pursue state remedies before a valid complaint may be filed with the EEOC or with this Court. *Id.* at 605.

In *King v. New Hampshire Dept. of Resources and Economic Development*, 420 F.Supp. 1317 (D.N.H.1976), *aff'd* 562 F.2d 80 (1st Cir. 1977), the court decided that before a plaintiff can bring a civil action pursuant to 42 U.S.C. § 2000e he must follow the procedures delineated in 42 U.S.C. § 2000e–5(c) requiring the filing of unlawful employment practices claims occurring in a state to the proper state administrative authority. Of course, a plaintiff is not required to pursue state remedies unless such remedies are available. As 42 U.S.C.A. § 2000e–5(c) requires:

The practice alleged must violate the federal law, Title VII; it must also violate a state or local law prohibiting the practice alleged; the state must have set up some mechanism to deal with the violation. That last requirement is fulfilled if the state has either established a state or local authority or authorized an existing state or local authority that is empowered to do one of three things: to grant relief from the practice; to seek relief from the

practice; or to institute criminal proceedings with respect to the practice. *White v. Dallas Independent School District,* 581 F.2d 556, 558–559 (5th Cir. 1978). South Carolina has such statutory provisions prohibiting, in language almost identical to the federal statute, any unlawful employment practice by an employer. The State has a Human Affairs Commission which has the authority to deal with any such violations and is empowered to seek relief from the employer for the alleged discriminatory practice.[3] Attached to this complaint is an apparent copy of the form which plaintiff filed with the South Carolina Human Affairs Commission, alleging discriminatory acts by the defendant. This form was filed *prior* to March 22, 1979, the date that the South Carolina Human Affairs Commission gained the power to investigate and grant relief from private acts of discrimination. Plaintiff should have and was required to exhaust this state remedy once it became available. Even though he previously filed a claim with the South Carolina Human Affairs Commission, his efforts were to no avail since this Commission had no power. But plaintiff did have an available remedy after March 22, 1979 which he was required to pursue. Since South Carolina did afford appropriate administrative remedies on March 22, 1979, the plaintiff was required to exhaust those remedies before filing this action in the federal court. His complaint contains no allegations whatsoever that he had undertaken steps to exhaust his available state remedies subsequent to March 22, 1979. Without such allegations, this court is required to dismiss any claim by plaintiff brought pursuant to 42 U.S.C.A. § 2000e–2.

In *Trent v. Allegheny Airlines, Inc.,* 431 F.Supp. 345 (W.D.Penn.1977) the court clearly found that plaintiffs were required to exhaust available state administrative remedies prior to entering the federal system, and plaintiff's failure to allege the exhaustion of such state remedies require dismissal of the complaint, stating

Section 2000e–5(c) provides that in states that have state agencies with authority to seek or grant the relief requested, charges must be filed with that state agency to give the local officials an opportunity before charges may be brought with EEOC to resolve the matter. Normally, when a aggrieved employee fails to exhaust his state remedy before filing with EEOC, the EEOC will defer the charges to the state agency on behalf of the charging employee. 29 C.F.R. § 1601.12. The EEOC will then assume jurisdiction after the earlier disposition by the state agency, or the expiration of 30 days. *Id.* The Supreme Court has approved of this procedure to satisfy the state exhaustion requirement for the employee. *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed. 679 (1972). Thus, it has been held that pleadings are sufficient if they allege a timely filing of charges with the state agency or EEOC, or include a copy of the charges filed with the state agency to show the state remedy was exhausted. See *Baker v. California Land Title Co.,* 507 F.2d 895 (9th Cir.), *cert. den.,* 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1972). Similarly, an allegation of timely filing with the EEOC and a copy of the EEOC's deferral letter to the state agency would also suffice. In this case, however, the complaint neither alleges compliance with all jurisdictional prerequisites nor contains any document to evidence that the charges were either initially brought before the Pennsylvania Human Relations Commission or were deferred to the state commission by the EEOC pursuant to EEOC regulations. Under these circumstances, we must dismiss the Complaint without prejudice to renew in order to show state exhaustion or to renew the suit upon first exhausting the state remedy . . . *Id.* at 351.

In the case at bar, plaintiff has failed to allege exhaustion of state remedies subsequent to March 22, 1979 in any of the ways

---

3. See *S. C. Code Ann.* § 1–13–10 through 1–13–100 as amended by the legislature and approved by the governor on March 22, 1979.

enumerated in the *Trent* case. Without this allegation of exhaustion, this court does not have jurisdiction of any claim pursuant to 42 U.S.C.A. § 2000e–2. Any claim, by plaintiff, under such statute is dismissed.

## JURISDICTION OF ANY CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT

This court has no jurisdiction to hear any claim plaintiff may pursue under Title VII of the Civil Rights Act of 1964, accordingly effort to pursue such claim by plaintiff in this action is denied and claim dismissed.

■■■ The "right-to-sue" letter attached to plaintiff's complaint, shows that the EEOC found that there was "no jurisdiction" to process further plaintiff's claim. The EEOC is the federal agency vested with the authority and expertise to investigate employment discrimination suits or claims brought pursuant to Title VII. A claimant seeking a Title VII claim must first pursue his administrative remedies through the EEOC before this court has jurisdiction to hear the claim, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1071, 39 L.Ed.2d 147 (1975).[4] Plaintiff has apparently sought relief through the EEOC prior to filing suit in this court. As stated, that agency, looking to Title VII found "no jurisdiction" to proceed. Since the experts in the field of Title VII found no jurisdiction to proceed, this court should defer to that finding and dismiss the plaintiff's Title VII claim. This is not to say that this court could not or should not question a finding that "no reasonable cause was found to believe that the allegations made in [claimant's] charge are true . . ." [See the possible reasons for dismissal listed on the "right-to-sue" notice filed with plaintiff's complaint]. Such a finding would be based upon findings of facts over which reasonable men could attach different significance and interpretations. However, a finding of no jurisdiction by the EEOC is a determination by the experts in the field of employ-

ment discrimination that the plaintiff herein has not properly proceeded or makes no claim cognizable under Title VII. This court finds nothing in the record, nor any promise elsewhere of the existence of evidence supporting a Title VII claim.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE DUE PROCESS CLAUSE OF THE FIFTH OR FOURTEENTH AMENDMENTS TO THE CONSTITUTION, UNDER 42 U.S.C. § 1983, OR TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

■■■ Initially, as to any claims which plaintiff alleges under the due process clauses of either the Fifth or Fourteenth Amendments, it is clear that defendant's motion to dismiss should be granted. Before there is a due process violation under the Fifth Amendment, it is clear that some federal action is necessary.

> The Due Process Clause of the 5th amendment applies to and restricts only the federal government and not private persons. *Public Utilities Comm. v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d 483, 487 (9th Cir. 1974).

Similarly, before there can be any violation of the Fourteenth Amendment Due Process Clause there must be "state action". See *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In the case at bar, plaintiff has failed to allege any state action or federal action whatsoever whereby he was deprived of any rights under the Due Process Clause of either the Fifth or Fourteenth Amendments. As the court stated in *Wright v. St. John's Hospital*, 414 F.Supp. 1202, 1208 (N.D.Okla.1976):

> The defendant further contends that the Court has no jurisdiction of the action under the Fourteenth Amendment. As stated in 14 C.J.S. Civil Rights § 153 (1974);

---

**4.** The prerequisites to the institution of a lawsuit in federal court are met when petitioner (1) files a timely charge of employment discrimination with the Commission, and (2) receives and acts on the Commission's statutory notice of the right-to-sue.

"In an action in which recovery is sought for the deprivation of rights guaranteed by the First or Fourteenth Amendments to the federal constitution, it must be established that the conduct complained of was equivalent to either state or federal action."

See also *Post v. Payton,* 323 F.Supp. 799 (E.D.N.Y.1971). Plaintiff having made no allegation that the defendant in any manner acted under color of state or federal law, defendant's Motion to Dismiss plaintiff's cause of action based on the Fourteenth Amendment is sustained.

This court, as the court in *Wright,* dismisses plaintiff's alleged due process claims for failure to allege state or federal action.

It is also clear that plaintiff cannot maintain any action for any alleged violation of his due process rights since plaintiff does not allege any deprivation of a liberty or property interest which is necessary before there can be any violation of the Due Process Clause. As the United States Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), a case dealing with the Due Process Clause of the Fourteenth Amendment:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.

Plaintiff has alleged no such deprivation, (see *Roth, supra* ) nor has he stated facts to show that he has been deprived of a liberty or property interest as defined in *Roth.*

As to any alleged violation of 42 U.S.C. § 1983, if any such allegation has been made by the plaintiff, it is clear that plaintiff has alleged no action under the color of state law so as to state a claim for violation of said statute. As is stated at 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As the court stated in *Ouzts v. Maryland National Ins. Co.,* 505 F.2d 547, 550 (9th Cir. 1974): [5]

> In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendants were acting under color of state law . . . [w]e recognize at the outset that the "state action" requirement of the Fourteenth Amendment and the "under color of state law" requirement of section 1983 have been construed by the Supreme Court to be substantially the same. *U. S. v. Price,* 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

As defendant has previously pointed out plaintiff makes no allegations whatsoever of any state action or any action "under color of state law" by defendant so as to state a claim for violation of 42 U.S.C. § 1983. The failure to make such allegations clearly requires that this court dismiss plaintiff's claim, if any he has made, for any violation of 42 U.S.C. § 1983.

Additionally, plaintiff has failed to allege the jurisdictional basis for a § 1983 claim as set forth in 28 U.S.C. § 1343. The only jurisdictional basis plaintiff alleges is the Civil Rights Act of 1964. This allegation is clearly insufficient to invoke this court's jurisdiction over a claim brought pursuant to 42 U.S.C. § 1983, if plaintiff is in fact making such a claim.

As to any Title VII claim, plaintiff does not allege in his complaint *per se* that he belongs to a racial minority. Plaintiff has, however, attached to his complaint EEOC Form 5a which does contain an allegation that he is black and thus a member of a racial minority. While plaintiff may have alleged that he belongs to a racial

---

5. See also, *Hall v. Asher,* 355 F.Supp. 808 (D.Md.1973) where the court dismissed § 1983

actions against all but one defendant for failure to allege action under color of state law.

minority, his complaint is so vague and conclusory that it cannot withstand a motion to dismiss under Rule 12(b)(6). Plaintiff's conclusory allegations that he has been discriminated against do not contain sufficient factual details regarding any alleged acts of discrimination so as to state a claim. Before plaintiff's complaint can withstand a Motion to Dismiss, he must state more factual details regarding how, when, where, and by whom he has been deprived of any protected rights. In any event, plaintiff has failed to allege the exhaustion of his state administrative remedies as the defendant has previously shown in 1(a). This failure to allege exhaustion of state administrative remedies as well as the vague and conclusory nature of plaintiff's complaint clearly requires that this court grant defendant's Motion to Dismiss.

### SUMMARY JUDGMENT CONSIDERATION

Plaintiff alleges that he was "dismissed" from his job at Pinkerton, Inc. Judge Russell, in *King v. Seaboard Coast Line Railroad Co.*, 538 F.2d 581 (4th Cir. 1976), stated:

> The suit filed may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.' *Id.* at 583.[6]

In his EEOC Charge of Discrimination plaintiff claims that such acts of discrimination occurred on or around December 24, 1978 and February 21, 1979. As the EEOC conducted no investigation of other alleged acts of discrimination, plaintiff is limited to the charges of discrimination as set forth in his EEOC Form 5a. It is clear, as shown by the attached Affidavit of James C. Williams,[7] that plaintiff was not dismissed on December 24, 1978 or February 25, 1979 nor was he dismissed as a result of any events occurring on or about the aforementioned dates. (See employment records attached to Affidavit of Mr. Larry L. Crouch and Captain Gulley).

Even though it is defendant's contention that plaintiff is restricted to the dates and allegations set forth in his EEOC charge of discrimination, defendants' affidavits convince the court that plaintiff was, in fact, dismissed from Pinkerton, Inc. on April 16, 1979. The reasons for this dismissal are set forth hereinafter and are not refuted by counter affidavits.

While plaintiff alleges that he was only "dismissed" from Pinkerton, Inc., if the court finds that plaintiff's complaint states claims for other acts of discrimination besides the alleged dismissal on or about December 24, 1978, or February 25, 1979, plaintiff would have a right to proceed, but defendant clearly shows that any actions taken by Pinkerton, Inc. in respect to plaintiff were in no manner based on plaintiff's race. In fact, at no time whatsoever did defendant take any action against plaintiff because of his race.

On December 24, 1978, plaintiff was reported as having walked off the job while he was working at Nassau. Plaintiff contended that he had not in fact walked off the job, but was ordered to leave the job. On December 26, 1978, plaintiff was called in to discuss the incident with James C. Williams. During this discussion, he informed Mr. Williams that he did not want to return to Nassau on a regular basis. Mr. Williams then told plaintiff that he would thus have to accept "spot" assignments until a regular position on a 4:00 p. m.—12:00 p. m. shift (which plaintiff claimed he was limited to, due to classes at a local technical college) became available. Plaintiff was, however, asked to fill-in at Nassau on a "spot" basis. He was subsequently contacted by Captain Gulley, Pinkerton's assignment officer, and asked to return to accept temporary assignments at Nassau. Plaintiff, however, turned down the requests to return to work for the stated reason that he was sick. Since plaintiff did not desire to return to Nassau on a regular basis, defend-

---

6. There is no allegation here that discharge for failure to perform a duty would not be applied to one of the white race.

7. Plaintiff made no attempt to refute the facts stated by Williams.

ant was forced to assign another guard to the post previously held by the plaintiff.

Subsequently, another post was found for plaintiff at Allied Chemical Plant. After he had worked there several days, an emergency arose when an employee of Allied was injured, and throughout the time in and around the emergency, plaintiff failed to perform his duty as a security guard properly.

Because of plaintiff's failure to properly perform, he was asked to see Mr. Williams on Monday, February 26, 1979. During this discussion, plaintiff was orally reprimanded by Mr. Williams for his inaction and actions at Allied Chemical on February 24, 1979. During the discussion, he told Mr. Williams that if he were required to go back to Allied, there was a strong possibility that physical contact would occur between him and Guard Long. At this point, Mr. Williams informed plaintiff that he was relieved of his duties at Allied. Even though Settles' acts constituted grounds for dismissal, Mr. Williams again offered to allow plaintiff to remain as an employee at Pinkerton. Specifically, he was told that he would be on call to take the place of dropouts during the week and would be put on the regular weekend roster, until another 4:00 p. m.—12:00 p. m. position became available which plaintiff would accept. Plaintiff agreed to this assignment.

From the time that the plaintiff was told not to return to Allied until April 11, 1979, efforts were made to contact the plaintiff every Wednesday or Thursday in an effort to assign him to alternative posts as a security guard. Contact was not often made with the plaintiff since there was usually no answer when the calls were placed. However, these calls every Wednesday or Thursday did result in plaintiff being contacted several times and being assigned work. As reflected by the work and time sheets attached to the Affidavits of Mr. Larry L.

Crouch and Captain Gulley, plaintiff was assigned and did work on the following dates:

March 25 – Interpace, Inc.
March 31 – Nassau
April 1 – Nassau
April 7 – Nassau
April 8 – Nassau
April 13 – Nassau

Plaintiff was also assigned to work at Nassau on April 14, 1979, but "fell out" and was "replaced by Smith, J." Plaintiff was also assigned to work at Nassau on April 15, 1979, but again "fell out." Specifically, on the morning of April 14, 1979, after plaintiff had been assigned work for April 14 and 15, plaintiff contacted Pinkerton, Inc. at 9:00 a. m. on April 14 and informed them that he was going out of town and would not be reporting for duty as assigned.

Due to plaintiff's apparent inability and refusal to meet his job requirements and assignments at Pinkerton, Inc., plaintiff was dismissed on April 16, 1979 by Mr. Williams, Supervisor of Security. Plaintiff was asked to and did turn in his uniforms and equipment. As can be seen from the attached Affidavits and above discussion, plaintiff was not dismissed for any reason relating to his race. Instead, he was dismissed on April 15, 1979, due to his failure to perform his duties as assigned. He was given the benefit of the doubt regarding the incidents of December 24, 1978, and February 24, 1979, and he was not dismissed on or about either of those dates. However, when he did not report to work on April 14 and 15 after he had already been assigned to work on those dates, Pinkerton, Inc. could no longer maintain plaintiff as a security guard since he could not meet his assignments. Since defendant's actions were in no way motivated on the basis of plaintiff's race, it is clear that this court finds it proper to dismiss the plaintiff's claim under 42 U.S.C. § 2000e–2.

The motion(s) to dismiss is granted for the reasons stated. Summary judgment is declared for defendant.[8]

AND IT IS SO ORDERED.

---

8. The Clerk shall send, along with a copy of this order, a copy of Rules 3, 4 and 24 of the Federal Rules of Appellate Procedure, xeroxed, insofar as they apply to civil appeals.